Dean G. Rallis Jr. (# 94266)
drallis@afrct.com
Matthew D. Pham (# 287704)
mpham@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP
301 N. Lake Ave., Suite 1100
Pasadena, California 91101-4158
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for WELLS FARGO BANK, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a/ World Savings Bank, FSB

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

In re

LAURA A. GENS,

Debtor.

Case No.: 15-53562-SLJ

Chapter 11

**WELLS FARGO'S MOTION FOR ALLOWANCE OF POSTPETITION INTEREST, ATTORNEY'S FEES, AND COSTS UNDER 11 U.S.C. § 506(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 25, 2017
Time: 1:00 p.m.
Crtrm: 3099
280 South First Street
San Jose, California 95113

**TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR AND HER COUNSEL OF RECORD; ALL CREDITORS; AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

Wells Fargo Bank, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, which was formerly known as World Savings Bank, FSB ("Wells Fargo"), secured creditor of Laura A. Gens, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves for the

allowance of postpetition interest, attorney's fees, and costs to be added to its allowed secured claim (the "Motion") under the statutory authority of § 506(b) of title 11 of the United States Code (the "Bankruptcy Code"). The Motion is supported by the accompanying memorandum of points and authorities and the concurrently filed declarations of Zenobia Smith (the "Smith Declaration"), Mark T. Flewelling (the "Flewelling Declaration"), and Dean G. Rallis Jr. (the "Rallis Declaration") and request for judicial notice (the "RJN").

By this Motion, Wells Fargo respectfully requests that the Court find that Wells Fargo has satisfied the requirements of § 506(b) and enter an order:

1. Granting the Motion;

2. Allowing Wells Fargo to amend Proof of Claim No. 5-1 and Proof of Claim No. 6 to reflect the following in its allowed secured claim:

a. That Wells Fargo is entitled to postpetition interest calculated in accordance with the applicable loan instruments; and

b. That Wells Fargo is entitled to postpetition attorney's fees in the amount of **$115,848.50** and postpetition costs in the amount of **$6,113.21**; and

3. Providing for such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

Dated: December 28, 2016

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: /s/ Dean G. Rallis Jr.
Dean G. Rallis Jr.

Attorneys for WELLS FARGO BANK, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB



Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 2 of 27

## TABLE OF CONTENTS

1. FACTUAL BACKGROUND. ........ 1
2. ARGUMENT. ........ 3
   A. Section 506(b), Generally. ........ 3
   B. Wells Fargo's Claim Is an Allowed Secured Claim. ........ 4
      i. Wells Fargo's Claim Has Been Allowed by the Court. ........ 4
      ii. Wells Fargo's Claim Is Secured by Estate Property. ........ 4
   C. Wells Fargo Is an Oversecured Creditor. ........ 5
   D. Postpetition Interest. ........ 6
   E. Wells Fargo's Fees and Costs. ........ 7
      i. Attorney's Fees Incurred by Wells Fargo. ........ 8
      ii. Costs Incurred by Wells Fargo. ........ 14
      iii. Wells Fargo's Fees and Costs Are Provided for in the Note and Deed of Trust. ........ 14
      iv. Wells Fargo's Fees Are Reasonable. ........ 17
      v. Wells Fargo's Costs Are Reasonable. ........ 20
3. CONCLUSION. ........ 21

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Casa Blanca Project Lenders, L.P. v. City Commerce Bank (In re Casa Blanca Project Lenders, L.P.), 196 B.R. 140 (B.A.P. 9th Cir. 1996)....7

Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090 (9th Cir. 2009) ....3, 8

Dalessio v. Pauchon (In re Dalessio), 74 B.R. 721 (B.A.P. 9th Cir. 1987)....18

Fla. Partners Corp. v. S.E. Co. (In re S.E. Co.), 868 F.2d 335 (9th Cir. 1989) ....3

Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship), 256 B.R. 916 (B.A.P. 9th Cir. 2000)....15

Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674 (9th Cir. 1986) ....3, 7, 18

Kamai v. Long Beach Mortg. Co. (In re Kamai), 316 B.R. 544 (B.A.P. 9th Cir. 2004)....16

Kord Enters. II v. Cal. Commerce Bank (In re Kord Enters. II), 139 F.3d 684 (9th Cir. 1998) ....3, 7, 8

P.J. Taggares Co. v. Glenn (In re Glenn), 796 F.2d 1144 (9th Cir. 1986) ....5

St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525 (9th Cir. 1994), amended by 46 F.3d 969 (9th Cir. 1995)....5

United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989)....5, 6

**FEDERAL STATUTES**

11 U.S.C. § 501....4

11 U.S.C. § 501(a) ....4

11 U.S.C. § 502(a) ....6

11 U.S.C. § 502(b) ....4

11 U.S.C. § 506(a) ....4

11 U.S.C. § 506(b) ........ *passim*

11 U.S.C. § 541(a)(1) ........ 5

**STATE STATUTES**

Cal. Civ. Code § 1717 ........ 8

Cal. Rev. & Tax Code §§ 2187, 2192.1 ........ 6

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP



Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 5 of 27

## MEMORANDUM OF POINTS AND AUTHORITIES

Given that that the Court has definitively ruled on the Debtor's claim objections in Wells Fargo's favor, Wells Fargo now moves for the allowance of its postpetition interest, attorney's fees, and costs under § 506(b) of the Bankruptcy Code. Wells Fargo's Motion requests that postpetition interest (in an amount to be determined when an amended proof of claim is filed) and postpetition attorney's fees and costs in the aggregate amount of **$121,961.71** be allowed and added to Wells Fargo's now-allowed claim. Because Wells Fargo is an oversecured creditor with an allowed secured claim and entitled to recover the requested interest, fees, and costs pursuant to the applicable loan instruments, Wells Fargo respectfully requests that the Court grant Wells Fargo's Motion and allow the postpetition interest, fees, and costs as requested.[1]

### 1. FACTUAL BACKGROUND.

On or about November 17, 2006, the Debtor obtained a loan from the lender World Savings Bank, FSB (the "Loan").[2] The Loan is evidenced by an adjustable rate mortgage note dated November 17, 2006, in the original principal amount of $1,620,000.00, that is signed by the Debtor (as the borrower) and that identifies the borrower as "Laura Gens, a married woman" and the lender as "World Savings Bank, FSB, a federal savings bank, its successors and/or assignees" (the "Note").[3] The Note is secured by a deed of trust dated November 17, 2006, that is signed by the Debtor (as the borrower) and Timothy Gens (as the borrower's spouse), and that identifies the trustor as "Laura Gens, a married woman" and the beneficiary as "World Savings Bank, FSB, its successors and/or assignees" (the "Deed of Trust").[4] The Deed of Trust grants a security interest in certain real property commonly described as 4141 Old Trace Road, Palo Alto,

---

[1] Certain citations have been moved to the footnotes where the insertion of such citations following the text in the main body would have otherwise been distracting.

[2] See RJN Ex. 19, at 197 (Decl. of Jamila Williams in Supp. of: (1) Wells Fargo's Opp'n to Debtor's Objections to Claim No. 5 & Claim No. 6; & (2) Wells Fargo's Suppl. Opp'n to Debtor's Objection to Claim No. 6 (Regarding Atty's Fees & Costs) ¶ 4 (the "Williams Declaration")).

[3] See id. at 233, 238 (Williams Decl. Ex. 1, at 34, 39).

[4] See id. at 239, 254, 256 (Williams Decl. Ex. 2, at 40, 54, 56).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

California 94306-3728 (the "Palo Alto Property" or "Property"), and was recorded with the Santa Clara County Recorder on November 28, 2006, as instrument no. 19202004.[5]

Effective December 31, 2007, World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, and effective November 1, 2009, Wachovia Mortgage, FSB, merged into Wells Fargo Bank, N.A., through an intermediary entity named Wells Fargo Bank Southwest, N.A., that same day.[6] Through this name change and subsequent merger, Wells Fargo is the current lender under the Note and the current beneficiary under the Deed of Trust.[7]

The Debtor filed her voluntary petition on November 11, 2015 (the "Petition Date"), initiating the above-captioned chapter 11 case. The next day, the Court issued a notice setting March 8, 2016, as the claims bar date for nongovernmental creditors to file proofs of claim. On that date, Wells Fargo timely filed Proof of Claim No. 5-1 ("Claim No. 5") and Proof of Claim No. 6 ("Claim No. 6," and together with Claim No. 5, the "Claims" or "Proofs of Claim") on account of the debt owed by the Debtor under the Note and Deed of Trust. Altogether, Wells Fargo asserted a combined secured claim of $2,625,001.51 in its Proofs of Claim.

On April 4, 2016, the Debtor filed two objections to both of Wells Fargo's Claims (the "Objections"), which, if sustained by the Court, would have reduced Wells Fargo's combined secured claim to $1,650,000.00. After the parties stipulated to extend the briefing schedule for Wells Fargo to respond to the Objections, Wells Fargo filed its oppositions to the Objections, along with the evidence in support thereof, on July 28 and 29, in which Wells Fargo argued that its combined claim should be allowed in the aggregate amount of $2,577,781.47.

A hearing on the Debtor's Objections was held on August 11, 2016, where the Court heard oral argument from counsel and then took the matter under submission. On August 30, the Court entered its order overruling the Debtor's Objections, thereby allowing Wells Fargo's Claims as set forth in its oppositions. The Debtor did not file a notice of appeal of the Court's order within the requisite 14-day period, which has now made such order final and non-

---

[5] See id. at 240 (Williams Decl. Ex. 2, at 40).

[6] See RJN Exs. 1–3.

[7] See RJN Ex. 19, at 198 (Williams Decl. ¶ 6).

appealable.

## 2. ARGUMENT.

### A. Section 506(b), Generally.

Section 506(b) of the Bankruptcy Code allows secured creditors, if oversecured, to include postpetition interest, fees, and costs as part of their allowed secured claims. Specifically, this provision sets forth, in relevant part, the following:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Under § 506(b), a "creditor is entitled to [postpetition] attorneys' fees [and costs] if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees [and costs] are reasonable; and (4) the fees [and costs] are provided for under the agreement." Kord Enters. II v. Cal. Commerce Bank (In re Kord Enters. II), 139 F.3d 684, 687 (9th Cir. 1998) (citing Takisaki v. Alpine Grp., Inc. (In re Alpine Grp., Inc.), 151 B.R. 931, 935 (B.A.P. 9th Cir. 1993); Meritor Mortg. Corp. W. v. Salazar (In re Salazar), 82 B.R. 538, 540 (B.A.P. 9th Cir. 1987)). In contrast, for postpetition interest, there is no reasonableness requirement. See Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674, 676 (9th Cir. 1986). Additionally, § 506(b) only governs the claim for interest accrued and fees and costs incurred through the date of plan confirmation. See Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1099–101 (9th Cir. 2009). Once awarded, postpetition fees and costs need not be paid out immediately; instead, they may be added to the unpaid principal balance. See Fla. Partners Corp. v. S.E. Co. (In re S.E. Co.), 868 F.2d 335, 340 (9th Cir. 1989).

Here, Wells Fargo seeks the allowance of postpetition interest that has accrued since the Petition Date, as well as postpetition fees and costs in the amount of **$121,961.71**, which represents the fees and costs incurred from the Petition Date through September 30, 2016 (the "Pendency Period"). If allowed, Wells Fargo should be permitted to add such amounts to its allowed secured claim.

/ / /

**B. Wells Fargo's Claim Is an Allowed Secured Claim.**

The first prerequisite under § 506(b) is that the creditor seeking postpetition interest, fees, and costs must hold an "allowed secured claim." Here, Wells Fargo can easily establish that its claim is both allowed and secured.

**i. Wells Fargo's Claim Has Been Allowed by the Court.**

"A claim . . . , proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 501(a). "[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that" one of the grounds for disallowance of the claim applies. Id. § 502(b).

On March 8, 2016, Wells Fargo timely filed Claim No. 5, asserting a **$2,136,529.31** secured claim, and Claim No. 6, asserting a **$488,472.20** secured claim. On April 4, the Debtor filed her two Objections to the Claims. For the Objection to Claim No. 5, the Debtor requested that the claim be allowed only in the amount of $1,650,000.00, and for the Objection to Claim No. 6, she requested that the claim be disallowed in its entirety.

On August 30, 2016, the Court entered its order overruling the Objections, which the Debtor did not appeal, effectively allowing Wells Fargo's Claims in full. Yet, due to Wells Fargo's recalculations of the claim amounts as set forth in its oppositions to the Objections, Claim Nos. 5 and 6 were reduced to **$2,125,190.51** and **$452,590.96**, respectively.[8] Once combined, Wells Fargo has an allowed claim in the amount of **$2,577,781.47**.

**ii. Wells Fargo's Claim Is Secured by Estate Property.**

A claim is a secured claim if the claim is "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a). "Under California law, a 'deed of trust' creates a lien on the property in favor of the creditor[, and] [u]nder the Bankruptcy Code, such a lien gives rise

---

[8] See generally Wells Fargo's Opp'n to Debtor's Objections to Claim No. 5 & Claim No. 6, ECF No. 88; Wells Fargo's Suppl. Opp'n to Debtor's Objection to Claim No. 6 (Regarding Att'y's Fees & Costs), ECF No. 89.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

to a secured claim." St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1534–35 (9th Cir. 1994), amended by 46 F.3d 969 (9th Cir. 1995).

Here, the Note, which evidences Wells Fargo's right to payment, is secured by the Deed of Trust that was recorded on November 28, 2006.[9] The Deed of Trust, in turn, created a lien on the Palo Alto Property in favor of Wells Fargo, as the successor beneficiary under the Deed of Trust.[10] Since the Debtor purported to hold a fee simple interest in the Property as of the filing of her chapter 11 petition,[11] the Debtor's estate currently has a fee simple interest in the Palo Alto Property. See 11 U.S.C. § 541(a)(1). It follows that Wells Fargo's $2,577,781.47 claim is "secured by a lien on property in which the estate has an interest," thereby making Wells Fargo the holder of a secured claim.

As Wells Fargo's claim has been allowed by the Court following the overruling of the Debtor's Objections and the claim is secured by a lien on estate property, the first prerequisite under § 506(b) has been satisfied.

### C. Wells Fargo Is an Oversecured Creditor.

Another prerequisite under § 506(b) is that the creditor's allowed secured claim must be "secured by property the value of which . . . is greater than the amount of such claim." In other words, the secured creditor must be "oversecured," meaning that the value of its collateral exceeds the amount of its allowed claim. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239 (1989); P.J. Taggares Co. v. Glenn (In re Glenn), 796 F.2d 1144, 1146 (9th Cir. 1986).

Here, Wells Fargo's secured claim is substantially oversecured, even after adding the requested postpetition fees and costs of **$121,961.71**.

In various filings with the Court, the Debtor has asserted that the value of the Palo Alto Property was **$4,978,000.00** as of the Petition Date.[12] The Debtor's figure is close to—and is, in

---

[9] See RJN Ex. 19, at 235 (Williams Decl. Ex. 2, at 40).

[10] See id. at 235–36 (Williams Decl. Ex. 2, at 40–41).

[11] See Debtor's Sch. A – Real Property, at 1, ECF No. 1.

[12] See Debtor's Sch. A – Real Property, at 1, ECF No. 1; Decl. of Debtor in Supp. of Mot. for Order Authorizing Debtor to Incur Debt, at 2, ECF No. 19-2.



ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

fact, even higher than—what Zenobia Smith, an appraiser hired by Wells Fargo, has appraised the Property to be worth. Specifically, in Ms. Smith's appraisal, she determined that the Palo Alto Property had a fair market value of **$4,610,000.00** as of April 3, 2016. See Smith Decl. ¶ 5 & Ex. 1. As the appraisal amount is more favorable to the Debtor, the Court should find that the Property is valued at $4,610,000.00 for purposes of this Motion.

As to whether Wells Fargo is oversecured as against the Palo Alto Property, the Court must first take into account the secured claim held by the County of Santa Clara Office of the Tax Collector ("Santa Clara County"), which presumably has lien priority over Wells Fargo's secured claim. Santa Clara County filed a proof of claim on September 7, 2016, asserting a $213,949.31 secured claim for unpaid property taxes on the Property,[13] which matches the amount set forth in the Debtor's own filings.[14] Assuming that there will be no objection to the allowance of Santa Clara County's claim, see 11 U.S.C. § 502(a), and that its lien has priority over Wells Fargo's, see Cal. Rev. & Tax. Code §§ 2187, 2192.1, there still remains $1,818,269.22 in equity or oversecurity in the Palo Alto Property after deducting the amounts owed to Santa Clara County and Wells Fargo from the value of the Property:

| Palo Alto Property | $4,610,000.00 |
|---|---|
| LESS Secured Claim of Santa Clara County | ($213,949.31) |
| LESS Secured Claim of Wells Fargo | ($2,577,781.47) |
| **Remaining Equity/Oversecurity** | **$1,818,269.22** |

Accordingly, postpetition interest, fees, and costs should be added to Wells Fargo's allowed secured claim to the extent that such interest, fees, and costs do not exceed $1,818,269.22.

**D. Postpetition Interest.**

Once established that the creditor is an oversecured creditor with an allowed secured claim, § 506(b) mandates the creditor's recovery of postpetition interest on its claim. See 11 U.S.C. § 506(b) (providing that "there shall be allowed . . . interest on such claim" (emphasis added)). Such "[r]ecovery of postpetition interest is unqualified," Ron Pair Enters., 489 U.S. at

---

[13] See Proof of Claim No. 7.

[14] See Debtor's Sch. D – Creditors Holding Secured Claims, at 1, ECF No. 1; Debtor's Combined Plan of Reorganization & Disclosure Statement Dated Feb. 11, 2016, at 3, ECF No. 52.

241, as "[t]he interest provision [under § 506(b)] is not subject to the reasonableness limitation," 268 Ltd., 789 F.2d at 676. Section 506(b), though, does not specify the interest rate to apply. See Casa Blanca Project Lenders, L.P. v. City Commerce Bank (In re Casa Blanca Project Lenders, L.P.), 196 B.R. 140, 143 (B.A.P. 9th Cir. 1996). If the secured claim is based on a contract, courts will typically apply the contract rate. See 268 Ltd., 789 F.2d at 676 ("When an oversecured creditor seeks interest on his or her claim, the bankruptcy courts apply the security agreement's interest rate."); Casa Blanca Project Lenders, 196 B.R. at 143 (stating that courts "generally apply the contract rate subject to rebuttal based upon equitable considerations").

Here, under the Note, interest accrues on the outstanding principal balance until Wells Fargo has been paid in full.[15] As the principal balance includes any deferred interest, interest also accrues on the outstanding deferred interest.[16] The interest rate is an adjustable (or variable) rate that may change each month, with each month's applicable rate tied to an index defined in the Note.[17] Nevertheless, the maximum interest rate can never exceed 11.950%.[18]

As there is nothing inequitable about the Note's provisions regarding interest, the Court has no need to deviate from what the Note provides in allowing Wells Fargo's recovery of postpetition interest.

**E. Wells Fargo's Fees and Costs.**

On top of postpetition interest, § 506(b) of the Code mandates an oversecured creditor's recovery of "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose" as part of its allowed secured claim. To recover fees and costs, § 506(b) requires only that the requested fees and costs be provided for under the applicable agreement and be reasonable. See Kord Enters. II, 139 F.3d at 687.

The Ninth Circuit's "case law has firmly established that § 506(b) entitles oversecured creditors to enforce contractual attorneys' fees provisions and preempts state law on attorneys'

---

[15] RJN Ex. 19, at 227 (Williams Decl. Ex. 1, at 34).

[16] See id. at 229 (Williams Decl. Ex. 1, at 36).

[17] See id. at 227–28 (Williams Decl. Ex. 1, at 34–35).

[18] See id. at 227 (Williams Decl. Ex. 1, at 34).





Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 12 of 27

fees." Hoopai, 581 F.3d at 1098. In other words, § 506(b) "does not require that attorneys' fees be awarded only when state law would permit such an award." Kord Enters. II, 139 F.3d at 689. Here, that means that notwithstanding the fact that this bankruptcy case remains pending, the Court does not need to engage in any analysis under California Civil Code § 1717 (e.g., determining whether Wells Fargo is the prevailing party in the action) before awarding fees and costs under § 506(b). Cf. Hoopai, 581 F.3d at 1098–99, 1101 (noting that, for purposes of awarding preconfirmation fees, § 506(b) preempts Hawaii law requiring the party seeking fees to be the prevailing party).

**i. Attorney's Fees Incurred by Wells Fargo.**

**(a) Hours Expended and Fees Billed by AFRCT.**

Over the Pendency Period, the members of AFRCT have altogether expended at least **688.2 hours** and billed **$155,849.00** in fees in connection with this bankruptcy case. See Flewelling Decl. ¶¶ 5, 10 & Ex. 7. When itemized by month, AFRCT's fees were as follows:

| AFRCT'S FEES (BY MONTH) | | | |
|---|---|---|---|
| **Month** | **Fees (Billed)** | **Courtesy Discount** | **Fees (Invoiced)** |
| November 2015 | $615.50 | ($0.00) | $615.50 |
| December 2015 | $3,539.00 | ($500.00) | $3,039.00 |
| January 2016 | $5,141.00 | ($0.00) | $5,141.00 |
| February 2016 | $3,336.00 | ($500.00) | $2,836.00 |
| March 2016 | $25,298.00 | ($0.00) | $25,298.00 |
| April 2016 | $30,877.00 | ($5,000.00) | $25,877.00 |
| May 2016 | $26,208.50 | ($4,000.00) | $22,208.50 |
| June 2016 | $10,086.00 | ($0.00) | $10,086.00 |
| July 2016 | $24,693.50 | ($2,000.00) | $22,693.50 |
| August 2016 | $10,870.00 | ($0.00) | $10,870.00 |
| September 2016 | $15,184.50 | ($1,500.00) | $16,684.50 |
| | **$155,849.00** | **($13,500.00)** | **$145,349.00** |

Id. ¶ 5 & Ex. 2. After applying courtesy discounts totaling **$13,500.00**, AFRCT invoiced Wells Fargo an aggregate amount of **$145,349.00** in fees for the services rendered during the Pendency Period. Id. ¶ 5.

**(b) Major Tasks Performed by AFRCT.**

The major tasks performed by AFRCT on behalf of Wells Fargo in this case over the Pendency Period included the following:

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

- Preparing an oral opposition to the Debtor's motion to extend the automatic stay;
- Preparing an opposition to the Debtor's motion to incur debt;
- Preparing an objection to the approval of the disclosure statement describing the Debtor's original plan;
- Preparing an objection to the approval of the disclosure statement describing the Debtor's first amended plan;
- Preparing an opposition to the Debtor's amended motion to incur debt;
- Reviewing the U.S. Trustee's motion to dismiss or convert the case and preparing a joinder to such motion;
- Preparing an objection to the approval of the disclosure statement describing the Debtor's second amended plan;
- Preparing Wells Fargo's supplemental proof of claim;
- Preparing discovery in connection with confirmation of the Debtor's second amended plan, including drafting requests for the production of documents, interrogatories, and subpoenas for the Debtor, Timothy Gens, his three companies (Technology Group, ChemAcoustic Technologies, and Technology Law Group), and one of his employers (GTT Group);
- Preparing a limited objection to the Debtor's motion to compel Wells Fargo's acceptance of payments and the resulting order;
- Preparing an objection to confirmation of the Debtor's second amended plan;
- Preparing three stipulations and corresponding orders to continue the briefing schedule for confirmation and the Debtor's Objections to Wells Fargo's Claims;
- Reviewing the Debtor's confirmation brief and analyzing the relevant confirmation issues;
- Preparing a stipulated protective order sufficient to GTT Group;
- Reviewing the documents produced in discovery by GTT Group;
- Preparing for and taking the deposition of Alan Kessler, the agent of GTT Group;

- Preparing the oppositions to the Debtor's Objections to Wells Fargo's Claims, including preparing the declarations and request for judicial notice in support thereof;
- Preparing a limited objection to the Debtor's counsel's interim fee application;
- Preparing the opposition to the Debtor's ex parte application to extend the Debtor's reply deadline in connection with the Debtor's Objections to Wells Fargo's Claims;
- Preparing the motion to dismiss this case or convert it to chapter 7;
- Preparing the present motion for postpetition interest, fees, and costs; and
- Preparing for and attending the hearings in connection with the above contested matters.

See Rallis Decl. ¶ 4.

**(c) Wells Fargo's Voluntary Reductions in Fees Sought.**

For purposes of its § 506(b) claim, Wells Fargo is not seeking the full **$155,849.00** in postpetition attorney's fees as part of the claim. Rather, Wells Fargo is voluntarily reducing its fees for the reasons stated below, effectively decreasing the requested amount of fees by **25.7%** from **$155,849.00** to **$115,848.50**.

First, Wells Fargo is electing to include only the fees billed by the four individuals primarily staffed on this bankruptcy case: The three attorneys, (A) Dean G. Rallis Jr., (B) Leigh O. Curran, and (C) Matthew D. Pham, and one paralegal, (D) Malinda S. Sinclair. Messrs. Rallis and Pham handled all of the more bankruptcy-oriented work, including drafting Wells Fargo's papers, appearing at hearings, and communicating with the Debtor's counsel, and were assisted by their paralegal, Ms. Sinclair. Rallis Decl. ¶ 6. Ms. Curran, a commercial litigator, handled the more litigation-oriented work, such as preparing all of the discovery requests, taking the deposition, and assisting with evidentiary issues relating to the preparation of declarations. Id. Out of the overall **688.2 hours** expended and **$155,849.00** in fees billed by AFRCT over the Pendency Period, this core team of four expended **640.5 hours** and billed **$140,266.50** in fees.[19] See Flewelling Decl. ¶ 6.

[19] The biographies of these four individuals are attached as **Exhibit 3** to the Flewelling Declaration.


Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 15 of 27
ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

By requesting the allowance of only the fees billed by the above four individuals for its § 506(b) claim, Wells Fargo is waiving all of the fees billed by the remaining attorneys and paralegals who had a less involved role in this case. See Rallis Decl. ¶ 7. Mr. Flewelling, a partner at the firm, held a more limited, supervisory role in this case (e.g., reviewing papers, discussing the case strategy, etc.), while the other attorneys and paralegals typically assisted the four core team members with a variety of ancillary tasks. Id. Altogether, the waived hours and fees from these attorneys and paralegals total **47.7 hours** and **$15,582.50**. See id.

On top of that reduction, Wells Fargo is also electing to reduce the amount of attorney's fees billed in preparing the written response to the Debtor's two Objections, which included (A) the primary opposition to the Objections to both Claims (**29 pages with an additional 20 pages across 15 exhibits**), (B) the supplemental opposition to only the Objection to Claim No. 6 (**28 pages**), (C) the supporting declaration from Wells Fargo's representative (**20 pages with an additional 228 pages across 15 exhibits**), (D) the supporting declaration from Mr. Flewelling (**27 pages with an additional 467 pages across 14 exhibits**), and (E) the request for judicial notice (**13 pages with an additional 908 pages across 70 exhibits**), along with (F) the notice of errata and (G) the supplemental declaration from Wells Fargo's representative (collectively, the "Opposition Papers"). Taking into account only the work of the four core team members, when aggregated, the core team expended **318.1 hours** and billed **$65,545.50** in fees in connection with the preparation of the Opposition Papers:

| CORE TEAM'S HOURS AND FEES (OPPOSITION PAPERS) | | | |
|---|---|---|---|
| **Timekeeper** | **Hours (Waived)** | **Hours (Billed)** | **Fees (Billed)** |
| Leigh O. Curran | 0.0 | 5.2 | $1,716.00 |
| Dean G. Rallis Jr. | 0.0 | 30.9 | $10,042.50 |
| Matthew D. Pham | 12.7 | 215.9 | $45,339.00 |
| Malinda S. Sinclair | 0.2 | 53.2 | $7,448.00 |
| | **12.9** | **305.2** | **$64,545.50** |
| | Overall Hours: **318.1** | | |

See Flewelling Decl. ¶ 8 & Ex. 5.

As the Court can likely infer from the filed Opposition Papers, preparing Wells Fargo's response to the Debtor's Objections was a herculean effort for Wells Fargo and its counsel.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Rallis Decl. ¶ 9. Although the Debtor filed only one-page Objections, the Debtor was objecting to Wells Fargo's accounting of the Loan, including whether Wells Fargo was properly applying the Debtor's payments to the Loan. Given what the Debtor was objecting to and how litigious she has been in the past, AFRCT decided that the most appropriate response to the Objections would be to comprehensively account for every line of the Loan's accounting and the payment history. Id. A short opposition proportionate to the Objections (e.g., only raising the burden-of-proof argument) would have likely invited further objection and litigation from the Debtor, including more discovery and a costly evidentiary hearing. Id. Thus, a considerably thorough response was prepared, intended to put an end to any and all contentions by the Debtor of Wells Fargo's impropriety in its accounting and eliminate the possibility of the Debtor raising any factual issues in her reply. Id. This approach proved to be successful when the Debtor failed to file any kind of written response to the Opposition Papers.

Yet, the process of completing the Opposition Papers took much longer than anticipated, especially with the preparation of the supporting declaration from Wells Fargo's representative. Id. ¶ 10. For a typical civil case defending Wells Fargo, AFRCT usually works with one or two people within a single department of Wells Fargo. Id. However, for this bankruptcy case, given the level of detail required for Wells Fargo's response, AFRCT needed a declarant with the background and expertise sufficient to allow him or her to fully evaluate the Debtor's Loan and go through its complete accounting in a supporting declaration. Id. AFRCT ended up working with a number of potential declarants and going through multiple iterations of the supporting declaration before finding a declarant who could competently attest to the statements in her declaration with actual personal knowledge. Id. AFRCT also had to communicate and work with various departments within Wells Fargo (e.g., legal, payments, bankruptcy) to obtain the appropriate business records and other documentary evidence supporting the accounting of the Loan and to verify their accuracy for the supporting declaration. Id. In the end, the declaration process actually lasted from April through July 2016, which explains why Wells Fargo needed multiple extensions of the briefing schedule. Id. Due to how much AFRCT had to rework the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP



Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 17 of 27

primary objection and the supporting declaration from Wells Fargo's representative, it is appropriate for Wells Fargo to reduce the amount of its requested fees.

Additionally, there was a change in strategy with regard to Wells Fargo's response to the Debtor's Objection to Claim No. 6, regarding AFRCT's prepetition attorney's fees and costs, which required AFRCT to substantially revise the supplemental opposition and the supporting declaration of AFRCT's representative. Id. ¶ 11. Similarly, a further reduction by Wells Fargo of its fee request is proper.

Therefore, for purposes of its § 506(b) claim, Wells Fargo is reducing the attorney's fees billed by the four core team members of AFRCT in connection with preparing the Opposition Papers from **$65,545.50** to **$40,127.50** (which decreases the number of hours billed for this task from **318.1** to **179.6 hours**):

| **CORE TEAM'S REDUCED HOURS AND FEES (OPPOSITION PAPERS)** | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Revised Hours (Waived)** | **Revised Hours (Billed)** | **Revised Fees (Billed)** | **Difference in Hours (Billed)** | **Difference in Fees (Billed)** |
| Leigh O. Curran | 4.3 | 0.9 | $297.00 | (4.3) | ($1,419.00) |
| Dean G. Rallis Jr. | 6.0 | 24.9 | $8,092.50 | (6.0) | ($1,950.00) |
| Matthew D. Pham | 82.8 | 145.8 | $30,618.00 | (70.1) | ($14,721.00) |
| Malinda S. Sinclair | 45.4 | 8.0 | $1,120.00 | (45.2) | ($6,328.00) |
| | **138.5** | **179.6** | **$40,127.50** | **(125.6)** | **($24,418.00)** |
| | Overall Hours: **318.1** | | | | |

See Flewelling Decl. ¶ 8 & Ex. 6. Wells Fargo's reduction of these fees for its § 506(b) claim is intended to reflect what AFRCT believes to be a reasonable amount of fees incurred in a similar case for preparing a response to a claim objection that challenges the accounting of a long-term loan, including all of the attendant attorney's fees, costs, and charges for the loan. Id. ¶ 9.

After taking into account the above-mentioned voluntary reductions, Wells Fargo requests the allowance of postpetition attorney's fees in the amount of **$115,848.50** for its § 506(b) claim. Such requested amount represents an overall waiver of **202.7 hours** (out of the **688.2 hours** expended) and a reduction of **$40,000.50** in fees (from the **$155,849.00** billed):

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

| AFRCT'S REDUCED HOURS AND FEES | | | | | |
|---|---|---|---|---|---|
| Timekeeper | Revised Hours (Waived) | Revised Hours (Billed) | Revised Fees (Billed) | Difference in Hours (Billed) | Difference in Fees (Billed) |
| Leigh O. Curran | 13.3 | 37.4 | $12,342.00 | (4.3) | ($1,419.00) |
| Dean G. Rallis Jr. | 6.0 | 98.1 | $31,882.50 | (6.0) | ($1,950.00) |
| Matthew D. Pham | 89.4 | 323.2 | $67,872.00 | (70.1) | ($14,721.00) |
| Malinda S. Sinclair | 46.3 | 26.8 | $3,752.00 | (45.2) | ($6,328.00) |
| All Other Timekeepers | 47.7 | 0.0 | $0.00 | (47.7) | ($15,582.50) |
| | **202.7** | **485.5** | **$115,848.50** | **(173.3)** | **($40,000.50)** |
| | Total Hours: **688.2** | | | | |

Id. ¶ 10 & Ex. 7.

**ii. Costs Incurred by Wells Fargo.**

Over the Pendency Period, AFRCT advanced at least **$6,113.21** in litigation costs in connection with this bankruptcy case. Flewelling Decl. ¶ 12. When itemized by type, AFRCT's costs were as follows:

| AFRCT'S COSTS (BY TYPE) | |
|---|---|
| **Type** | **Amount** |
| CourtCall Fees | $322.40 |
| Postage | $368.03 |
| Process Server Fees | $4,038.83 |
| Travel Expenses (Airfare, Cab Fare, and Hotel) | $1,063.20 |
| Miscellaneous | $320.75 |
| | **$6,113.21** |

Id. ¶ 12 & Ex. 8. AFRCT invoiced Wells Fargo an aggregate amount of **$6,113.21** for the costs advanced during the Pendency Period. Id. ¶ 12.

**iii. Wells Fargo's Fees and Costs Are Provided for in the Note and Deed of Trust.**

Section 506(b) allows for the recovery of fees and costs by the secured creditor only to the extent that they are "provided for under the agreement or State statute under which such claim arose." To determine whether the requested fees and costs have been provided by the applicable agreement, "[a] court must look to the language of the relevant contractual instrument, and determine its breadth based on the language contained therein." Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship), 256 B.R. 916, 925–26 (B.A.P. 9th Cir. 2000). "Where the bankruptcy courts have concluded that a mortgage provides for the recovery of

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

attorneys' fees, they [will be] allowed" under § 506(b). Kamai v. Long Beach Mortg. Co. (In re Kamai), 316 B.R. 544, 549 (B.A.P. 9th Cir. 2004).

Turning to the Note and Deed of Trust, it is clear that both instruments have broad contractual language allowing Wells Fargo to recover its attorney's fees and costs against the Debtor. Specifically, the terms of the Note authorize Wells Fargo to be "paid back by [the Debtor] for all of its costs and expenses in enforcing this Note," including "reasonable attorneys' fees and court costs."[20] And the terms of the Deed of Trust permit Wells Fargo to "do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property," such as "appearing in court" and "paying reasonable attorneys' fees," if the Debtor defaults on one of her obligations or a proceeding is initiated that may significantly affect Wells Fargo's rights, such as the filing of a bankruptcy case.[21] The Deed of Trust then goes on to require that the Debtor "will pay to Lender any amounts which Lender advances with interest."[22]

A plain reading of these provisions in the Note and Deed of Trust show that attorney's fees and costs are, in fact, recoverable by Wells Fargo. However, the applicable language of the instruments shows that there are two limitations on Wells Fargo's right to recover fees and costs from the Debtor. First, the fees and costs must have been incurred in either enforcing the Note or protecting Wells Fargo's rights in the Property. Second, the fees and costs must be reasonable. Here, Wells Fargo's requested **$115,848.50** in fees and **$6,113.21** in costs satisfy both contractual requirements.[23] The Court should therefore allow such fees and costs to be added to Wells Fargo's secured claim.

As to the first contractual requirement, the fees and costs incurred by Wells Fargo during this bankruptcy case fall within the scope of Wells Fargo enforcing its rights under the Note or protecting its rights in the Palo Alto Property. The Debtor's filing of this bankruptcy case, as

---

[20] See RJN Ex. 19, at 236 (Williams Decl. Ex. 1, at 37).

[21] See id. at 246 (Williams Decl. Ex. 2, at 46).

[22] See id. (Williams Decl. Ex. 2, at 46).

[23] As to the second requirement under the Note and Deed of Trust regarding reasonableness, Wells Fargo contends that such analysis would be substantially the same as the analysis regarding reasonableness under § 506(b) provided below.



ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

well as most of her actions taken during the case, show that she has been doing whatever she can to prevent Wells Fargo from exercising its rights under the Note and Deed of Trust. The Debtor moved to extend the automatic stay, which would have prevented Wells Fargo from moving forward with its remedies against the collateral. The Debtor also attempted to obtain financing that would have had the effect of further encumbering the Palo Alto Property. The Debtor then tried to alter Wells Fargo's contractual rights by proposing multiple versions of a plan compelling Wells Fargo to accept monthly cure payments on account of hundreds of thousands of dollars in prepetition arrearages over an extended amount of time and without providing for any contractually required interest. Finally, the Debtor attempted to substantially reduce the amount that she owes under the Loan by objecting to Wells Fargo's Claims.

In response, Wells Fargo, with great success, has been forced to defend against each of the Debtor's attempts at obtaining relief detrimental to Wells Fargo's rights, either by written response or oral argument. Wells Fargo had to oppose the Debtor's requested extension of the stay on bad faith grounds since she no longer wished to sell the Palo Alto Property as she had represented in the prior bankruptcy case. Wells Fargo had to object to the Debtor's proposed financing as being against the interests of the estate. Wells Fargo had to object to each version of the plan proposed by the Debtor, via the objections to the approval of the disclosure statement or the objection to confirmation, as the Debtor was improperly treating Wells Fargo's claim and proposing a plan that was doomed to fail upon going effective. And Wells Fargo had to respond to the Debtor's Objections to show how the amounts stated in the Proofs of Claim were, in fact, accurately calculated. By having to defend against and respond to all of the Debtor's requested relief during this case, Wells Fargo's actions should be construed as actions to enforce the Note or protect its rights in the Palo Alto Property. As a result, the fees and costs incurred by Wells Fargo during this bankruptcy case fall within the scope of the Note and Deed of Trust, allowing Wells Fargo to recover such fees and costs, to the extent they are reasonable, under § 506(b).

/ / /

/ / /

/ / /

iv. **Wells Fargo's Fees Are Reasonable.**

What constitutes "reasonable" fees under § 506(b) is a question of federal, rather than state, law. See 268 Ltd., 789 F.2d at 676–77. On this issue, the BAP has provided the following discussion:

> Reasonableness embodies a range of human conduct. The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. The bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property.

Dalessio v. Pauchon (In re Dalessio), 74 B.R. 721, 723 (B.A.P. 9th Cir. 1987). If requesting attorney's fees under § 506(b), the "attorney . . . bears the burden of proving the reasonableness of those fees, which can only be done by presentation of carefully detailed applications and supporting documentation." Id. at 724.

Attached to the Flewelling Declaration as **Exhibit 1** are true and correct copies of AFRCT's monthly billing statements (the "Monthly Billing Statements" or "Statements"), which show the services provided, time expended, and fees incurred by AFRCT in connection with its representation of Wells Fargo in this bankruptcy case over the Pendency Period.[24] When the billing entries corresponding to the fees waived by Wells Fargo are excluded, the Statements show that the time expended and fees incurred by AFRCT on behalf of Wells Fargo over the Pendency Period have been reasonable under the circumstances. After voluntarily reducing its fees, Wells Fargo is only requesting the allowance of **$115,848.50** in fees (from the $155,849.00

---

[24] In the Monthly Billing Statements, the following items were redacted: (A) AFRCT's federal tax identification number, (B) any billing entry by a non-core team member of AFRCT whose fees are being categorically waived, (C) any billing entry by a core team member of AFRCT in which the fees are being waived (relating to the preparation of the Opposition Papers), and (D) any billing entry that would disclose privileged communications between AFRCT and Wells Fargo (where the description of the services rendered has been partially redacted). Flewelling Decl. ¶ 11. Additionally, (Y) for any billing entry where fees are being waived, the amount of the fees has been stricken through, and (Z) any billing entry relating to the preparation of the Opposition Papers has been highlighted. Id.

originally billed) based on **485.5 hours** of billable work (out of the 688.2 hours expended overall).

Although the number of hours expended by AFRCT may seem significant, the Court must take note that these hours were spread across a 10 ½-month period and that the actions taken by AFRCT on behalf of Wells Fargo represented defensive, rather than offensive, actions taken to protect Wells Fargo's rights. The tasks performed demonstrate that AFRCT took action only when it was necessary to do so. In fact, throughout this case, AFRCT has shown substantial restraint and has not billed for unnecessary tasks or conducted itself in an abusive or aggressive manner against the Debtor. AFRCT did not file its own competing plan once the exclusivity period expired. AFRCT did not request an excessively broad and overwhelming amount of discovery. AFRCT did not move for discovery sanctions despite the Debtor's failure to respond to any discovery.

Although AFRCT did prepare an opposition or objection to nearly all of the relief requested by the Debtor, those responses were appropriate given that Wells Fargo was usually, in some capacity, the prevailing party in each contested matter. Wells Fargo orally opposed the Debtor's motion to extend the automatic stay, which was ultimately denied by the Court. Following Wells Fargo's opposition to the Debtor's motion to incur debt, the Debtor had to amend her motion, and following Wells Fargo's opposition to that amended motion, the amended motion was then withdrawn. Wells Fargo's limited objection to the Debtor's motion to compel acceptance of payments was sustained. Wells Fargo objected to the approval of each of the Debtor's disclosure statements, which ultimately required the Debtor to file multiple amended plans and disclosure statements. Due to the information uncovered during Wells Fargo's discovery, particularly from the deposition of Mr. Kessler, the Debtor was compelled to withdraw her second amended plan. As to the Debtor's Objections to Wells Fargo's Claims, following the filing of Wells Fargo's Opposition Papers, the Court overruled the Objections in their entirety. Wells Fargo was also successful in opposing the Debtor's ex parte application to extend her reply deadline in connection with the Objections. Lastly, Wells Fargo's limited objection to the Debtor's counsel's interim fee application was also sustained.

The only potential argument that the Debtor may have against the reasonableness of Wells Fargo's fees is that the expiration of the automatic stay on December 10, 2015, allowing Wells Fargo to proceed with the foreclosure process, made many of the actions taken by AFRCT on Wells Fargo's behalf in this case unnecessary. However, that argument would fail for a number of reasons.

First, even without the automatic stay, the Debtor decided to move forward with a plan of reorganization that proposed to cure the prepetition arrears owed to Wells Fargo over a substantial amount of time. If confirmed, Wells Fargo would have been precluded from moving forward with a foreclosure sale. Thus, it was necessary for AFRCT to continue participating in the bankruptcy case by objecting to the approval of Debtor's disclosure statements and to the confirmation of her plan in order to prevent the Debtor from improperly cramming down an illegitimate plan of reorganization on Wells Fargo.

Second, and more importantly, once the Debtor filed the Objections to Wells Fargo's Claims, it was in Wells Fargo's best interest to allow the claim allowance process to fully conclude before moving forward with a foreclosure sale. As there is potentially some equity in the Palo Alto Property, a dispute by the Debtor over the total amount of Wells Fargo's debt that would be paid from the proceeds of any sale is inevitable. To hedge for this and allow Wells Fargo to proceed with a foreclosure without further issue, Wells Fargo needed a final order from the Court liquidating the entire amount of its claim, including the attorney's fees. Without such order, given the Debtor's propensity towards litigating with Wells Fargo and the likelihood of her receiving some amount of surplus sale proceeds, there was a strong possibility of the Debtor putting the issue of the amount of Wells Fargo's debt into play, possibly before a trustee's sale could take place, by filing another lawsuit in state court. That would have added yet another obstacle that would have, again, delayed Wells Fargo from rightfully exercising its remedies against its collateral.

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP



Case: 15-53562 Doc# 132 Filed: 12/28/16 Entered: 12/28/16 12:57:00 Page 24 of 27

v. **Wells Fargo's Costs Are Reasonable.**

Finally, the Court must consider the reasonableness of Wells Fargo's costs. Here, Wells Fargo requests that its postpetition costs incurred over the Pendency Period in the amount of **$6,113.21** be allowed as part of its allowed secured claim. Attached to the Flewelling Declaration as **Exhibit 1** are true and correct copies of AFRCT's Monthly Billing Statements, which show the costs advanced by AFRCT in connection with its representation of Wells Fargo over the Pendency Period.

The bulk of AFRCT's costs—$3,668.71 out of the $6,113.21—related to the costs of hiring process servers to personally serve subpoenas on Timothy Gens and his companies.[25] Rallis Decl. ¶ 13. Service of the subpoenas had been attempted in (A) Palo Alto, California, on March 25, 2016, (B) Incline Village, Nevada, on March 25, 2016, (C) Lake Geneva, Wisconsin, on April 1, 2016, (D) Chicago, Illinois, on April 6, 2016, and (E) Palo Alto, California, again on April 26, 2016. Id. Given how critical Mr. Gens's income was to the funding of the Debtor's plan, it was reasonable for AFRCT to propound discovery on him and his companies. And given his status as a third party who had not submitted himself to the Court's jurisdiction, the uncertainty regarding where he was located, as well as the Debtor's failure to provide his address or accept service on his behalf, it was necessary for Wells Fargo's counsel to subpoena him by personal service. Although the total costs of hiring the process servers were relatively high, the Court should consider that the only way Wells Fargo could have avoided expending this much money was if the Debtor assisted Wells Fargo with its service attempts. Yet, that did not occur.

AFRCT's costs also included round trip airfare, cab fare, and hotel accommodations, altogether totaling $502.09, in connection with the out-of-state deposition of Alan Kessler, GTT Group's representative. Id. ¶ 15. As GTT Group's headquarters were located in Portland, it was reasonable for Wells Fargo's counsel to travel there to take the deposition. In the end, such deposition allowed Wells Fargo to uncover the issues with one of Mr. Gens's purported income sources, which ultimately forced the Debtor to withdraw her plan.

---

[25] AFRCT expended $370.12 in process server fees in connection with the subpoenas personally served on GTT Group. Rallis Decl. ¶ 14.

AFRCT also incurred $561.11 for round trip airfare and cab fare to San Jose to attend the hearing on the Debtor's claim objections in person. Id. ¶ 16. Such expense was also appropriate under the circumstances. Out of the nine hearings attended by one of AFRCT's attorneys in connection with this case, that hearing was the only one in which a personal appearance was made. Id. Given the potential stakes involved (i.e., the disallowance of a substantial portion of Wells Fargo's claim), it was reasonable for Wells Fargo to have its counsel personally appear. For all of the other hearings, as a cost-saving measure, AFRCT opted to appear telephonically. Id.

Overall, the **$6,113.21** in costs incurred over the 10 ½-month period in this bankruptcy case are reasonable and not excessive under the circumstances. Further, the requested costs represent the costs actually incurred by AFRCT. Flewelling Decl. ¶ 13. All out-of-pocket expenses, such as travel, postage, messenger fees, filing and other court costs, and CourtCall fees are charged at the actual cost. Id. And AFRCT does not charge Wells Fargo for in-house photocopy expenses or telephone expenses, thus avoiding a potentially large cost. Id. However, AFRCT does charge for outside photocopy services and teleconference fees paid to third-party vendors, but still at the actual costs. Id. Nevertheless, most, if not all, photocopies are handled in-house. Id.

The Court should therefore allow reasonable costs in the amount of **$6,113.21** to be added to Wells Fargo's allowed secured claim.

## 3. CONCLUSION.

By its Motion, Wells Fargo has established that it is entitled to add postpetition interest, fees, and costs to its allowed secured claim. Wells Fargo's claim has now been allowed following the Court's overruling of the Debtor's Objections, and Wells Fargo's claim is substantially oversecured by the Palo Alto Property, with its nearly $2 million in unencumbered equity. Further, by its Motion, Wells Fargo has demonstrated that the fees and costs that it has incurred during this bankruptcy case are reasonable under the circumstances, considering that the fees and costs were incurred to defensively protect Wells Fargo's rights against the largely unsuccessful requests for relief initiated by the Debtor.

**WHEREFORE**, Wells Fargo respectfully requests that the Court enter an order:

1. Granting the Motion;

2. Allowing Wells Fargo to amend Proof of Claim No. 5-1 and Proof of Claim No. 6 to reflect the following:

a. That Wells Fargo is entitled to postpetition interest calculated in accordance with the applicable loan instruments; and

b. That Wells Fargo is entitled to postpetition attorney's fees in the amount of **$115,848.50** and postpetition costs in the amount of **$6,113.21**; and

3. Providing for such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

Dated: December 28, 2016

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: /s/ Dean G. Rallis Jr.
Dean G. Rallis Jr.

Attorneys for WELLS FARGO BANK, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB