Dean G. Rallis Jr. (# 94266)
  drallis@afrct.com
Matthew D. Pham (# 287704)
  mpham@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
301 N. Lake Ave., Suite 1100
Pasadena, California 91101-4158
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for WELLS FARGO BANK, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a/ World Savings Bank, FSB

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>LAURA A. GENS,<br><br>    Debtor. | Case No.: 15-53562-SLJ<br><br>Chapter 11<br><br>**WELLS FARGO'S REPLY TO DEBTOR'S OPPOSITION TO WELLS FARGO'S MOTION FOR ALLOWANCE OF POSTPETITION INTEREST, ATTORNEY'S FEES, AND COSTS**<br><br>Date:    January 25, 2017<br>Time:    1:00 p.m.<br>Crtrm:   3099<br>          280 South First Street<br>          San Jose, California 95113 |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR AND HER COUNSEL OF RECORD; AND ALL PARTIES REQUESTING SPECIAL NOTICE:

    Wells Fargo Bank, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, which was formerly known as World Savings Bank, FSB ("Wells Fargo"), secured creditor of Laura A. Gens, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby submits its reply in

response to the Debtor's opposition (the "<u>Opposition</u>") to *Wells Fargo's Motion for Allowance of Postpetition Interest, Attorney's Fees, and Costs under 11 U.S.C. § 506(b)* (the "<u>Motion</u>").[1]

1. <u>INTRODUCTORY STATEMENT</u>.

The Debtor's Opposition presents a number of unmeritorious and often confusing arguments that highlight the Debtor's misunderstanding of § 506(b) and an oversecured creditor's rights to postpetition interest, attorney's fees, and costs under such provision. When those arguments are disregarded, the Debtor's only remaining argument is that Wells Fargo's attorney's fees were not reasonably incurred. But based on every request for relief by the Debtor that Wells Fargo had to defend against in this case, as well as Wells Fargo's success rate, it is clear that all of Wells Fargo's fees were reasonable and should be allowed.

2. <u>ARGUMENT</u>.

   2.1. **Wells Fargo's Motion Is Procedurally Proper**.

   Strangely enough, the Debtor's Opposition argues that Wells Fargo's Motion and the relief requested therein are untimely and, at the same time, premature. Yet, as discussed below, nothing about Wells Fargo's Motion was procedurally improper. The Motion was filed in a timely manner, and the relief requested therein can be adjudicated at this time. The Court should therefore dismiss the Debtor's procedural arguments.

   2.1.1. <u>Wells Fargo's Motion Was Timely Filed</u>.

   First, the Debtor argues that Civil Rule 54(d) required Wells Fargo to file its Motion seeking postpetition attorney's fees within 14 days of entry of the order allowing Wells Fargo's Claim (which was entered on August 31, 2016, at docket no. 109). Since Wells Fargo's Motion was filed on December 28, 2016, the Debtor contends that the Motion is untimely.

   While Civil Rule 54(d)(2)(B) does require that "a claim for attorney's fees . . . be made by motion" and that such motion "be filed no later than 14 days after the entry of judgment," Civil Rule 54(d)'s time limit is simply inapplicable to a secured creditor's request for postpetition attorney's fees under § 506(b). A secured creditor's entitlement to postpetition fees

---

[1] Unless otherwise defined herein, all capitalized terms will have the same meaning as set forth in Wells Fargo's Motion.

is not tied to such creditor's successful defense of its claim. Rather, its entitlement is tied to its status as an oversecured creditor. Thus, the date that a bankruptcy court overrules a claim objection and allows a claim has no bearing on when a secured creditor must seek allowance of its postpetition fees under § 506(b).

To the extent that there is a deadline to seek allowance of postpetition attorney's fees (as well as postpetition interest and costs) under § 506(b), such a deadline would be the confirmation date or the effective date of a plan. See In re Wetdog LLC, Case No. 13-40601-EJC, 2015 Bankr. LEXIS 2726, at *27–29 (Bankr. S.D. Ga. Aug. 14, 2015). That deadline would be consistent with related Ninth Circuit precedent, which provides that "§ 506(b) governs fees only until the confirmation or effective date of the plan." Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1099 (9th Cir. 2009). Thus, Wells Fargo would have until the confirmation date or the effective date in this case to file its Motion. Since no plan has been confirmed in this case, Wells Fargo's Motion is timely.

### 2.1.2. Wells Fargo's Motion Is Not Premature.

The Debtor also argues that Wells Fargo's Motion should be stayed pending resolution of the Debtor's not-yet-filed motion for reconsideration of the order allowing Wells Fargo's Claim, suggesting that Wells Fargo's Motion cannot be adjudicated at this time. And later in her Opposition, the Debtor contends that Wells Fargo's request for postpetition interest is premature because the Debtor can still reorganize in chapter 11 and cure the default to Wells Fargo under a plan. However, any argument that the relief requested in Wells Fargo's Motion is premature and cannot be decided at this time is also without merit.

The Debtor's motion for reconsideration would have no effect on Wells Fargo's right to postpetition interest, fees, and costs under § 506(b). Even if the Debtor succeeds on reconsideration and reduces Wells Fargo's allowed secured claim by some amount, Wells Fargo's then-reduced claim would still be oversecured and Wells Fargo would then still be entitled to postpetition interest, fees, and costs. Accordingly, there is no justification for the Court to indefinitely stay Wells Fargo's Motion while the Debtor contemplates whether or not she will file a motion for reconsideration sometime before August 2017.

As to the Debtor's argument regarding her ability to reorganize and cure prepetition defaults and Wells Fargo's request for postpetition interest, such argument is incomprehensible.[2] Nevertheless, as discussed above, the only effect that a confirmed plan has on a secured creditor's § 506(b) rights is that the confirmation date or effective date establishes the outer temporal boundary of the creditor's rights to postpetition interest, fees, and costs. See Hoopai, 581 F.3d at 1099. Such conclusion implicitly acknowledges that a secured creditor may still be entitled to postpetition interest, fees, and costs under § 506(b) despite the confirmation of a plan. Thus, the Debtor's argument that Wells Fargo's Motion is premature due to her ability to reorganize is simply without merit.

2.2. **Wells Fargo Is Entitled to Postpetition Interest**.

The Debtor also argues that Wells Fargo does not have a right to postpetition interest because the ability to charge interest is not one of the remedies available to Wells Fargo upon default under the Note or Deed of Trust. Once again, the Debtor's argument shows a misunderstanding of § 506(b).

Section 506(b)'s provision for postpetition interest has nothing to do with a secured creditor's remedies upon default. Rather, § 506(b) is intended to be the "exception to the prohibition against post-petition interest provided in § 502(b)(2)." Ground Improvement Techniques, Inc. v. Plan Committee (In re Wash. Grp. Int'l, Inc.), 460 B.R. 280, 285 (Bankr. D. Nev. 2011). While § 502(b)(2) would normally cut off a creditor's inclusion of postpetition interest in its claim, § 506(b) allows an oversecured creditor to include postpetition interest in its claim if the underlying agreement or state law provides for interest.

Here, as addressed in Wells Fargo's Motion, Wells Fargo is entitled to charge interest on the outstanding principal balance until Wells Fargo has been paid in full.[3] Additionally, since

---

[2] For her argument, the Debtor cites Great Western Bank & Trust v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.), 850 F.2d 1338 (9th Cir. 1988). However, the Ninth Circuit has recently noted that Entz-White has been superseded by § 1123(d) of the Code. See Pacifica L 51 LLC v. New Invs., Inc. (In re New Invs., Inc.), 840 F.3d 1137, 1138 (9th Cir. 2016) (providing that creditor is entitled to receive default interest rate as part of cure).

[3] See RJN Ex. 19, at 223 (Williams Decl. Ex. 1, at 34) ("Interest will be charged on unpaid Principal until the full amount of Principal has been paid.").

deferred interest is included as part of the principal balance, Wells Fargo is also entitled to charge interest on the outstanding deferred interest.[4] And, as the Deed of Trust allows for interest on the amounts advanced by Wells Fargo, Wells Fargo is also permitted to charge interest on the unpaid corporate advances, "escrow" advances, and attorney's fees and costs.[5] There is no question that Wells Fargo is entitled to interest under the Note and Deed of Trust.

The Debtor also argues that Wells Fargo is seeking postpetition interest on the unpaid late charges, but Wells Fargo has previously conceded that it would not be entitled to such interest.[6] Thus, Wells Fargo would not be including postpetition interest on the $19,931.54 in unpaid late charges in its amended proof of claim.

2.3. **Wells Fargo's Postpetition Attorney's Fees Are Reasonable**.

Lastly, the Debtor's Opposition argues that Wells Fargo's postpetition attorney's fees were not reasonably incurred. Specifically, the Debtor takes issue with Wells Fargo objecting or opposing every request for relief by the Debtor, suggesting that Wells Fargo's efforts were intended to "rack up attorney fees and push [the] Debtor to sell her home." Such an allegation is entirely false.

First, the Debtor fails to acknowledge that she, not Wells Fargo, has been the one who has been filing essentially all of the motions, applications, and other requests for relief in this case and that she, not Wells Fargo, has been the one who has lost in some capacity on nearly every contested matter in this case. Not only have most of Wells Fargo's actions been defensive and necessary in this case, but Wells Fargo's defensive actions have been appropriate under the circumstances given Wells Fargo's level of success. Coupled with the fact that Wells Fargo's only offensive actions in this case have been the filing of this Motion and the motion to dismiss

---

[4] See id. at 225 (Williams Decl. Ex. 1, at 36) ("If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.").

[5] See id. at 236 (Williams Decl. Ex. 2, at 46) ("Interest on each amount will begin to accrue on the date that the amount is advanced by Lender.").

[6] See Wells Fargo's Objection to Approval of the Disclosure Statement Aspect of Debtor's Combined Plan of Reorganization & Disclosure Statement Dated Nov. 4, 2016, at 11 n.30, ECF No. 144.

or convert, the Debtor cannot assert that Wells Fargo has only taken actions to "rack up" its attorney's fees in this case. On the contrary, Wells Fargo only did what was necessary to protect its rights.

Second, what the Debtor is essentially arguing is that the only way for Wells Fargo's fees to be considered reasonable is if Wells Fargo rolled over and allowed the Debtor to do whatever she wanted in this chapter 11 case, including letting the Debtor reduce Wells Fargo's claim by a significant amount and letting her propose multiple plans that were patently unconfirmable and unfair and inequitable to Wells Fargo. Even with the automatic stay expiring in this case, it is not as if Wells Fargo could simply ignore the bankruptcy proceedings. As the Debtor was taking actions that were intended to substantially and improperly impair Wells Fargo's rights, Wells Fargo was forced to do whatever it needed to do to protect its rights. Just because the Debtor's counsel has not seen a secured creditor actively participate in a bankruptcy case does not mean that such creditor is not entitled to do so.

For these reasons, the Court should find that Wells Fargo's attorney's fees were reasonably incurred and allow such fees in the amount prayed for in Wells Fargo's Motion.

3. CONCLUSION.

**WHEREFORE**, Wells Fargo respectfully respects that the Court enter an order:

1. Overruling the Debtor's Opposition;

2. Granting Wells Fargo's Motion;

3. Allowing Wells Fargo to amend Proof of Claim No. 5-1 and Proof of Claim No. 6 to reflect the following:

   a. That Wells Fargo is entitled to postpetition interest calculated in accordance with the applicable loan instruments; and

   b. That Wells Fargo is entitled to postpetition attorney's fees in the amount of **$115,848.50** and postpetition costs in the amount of **$6,113.21**; and

/ / /

/ / /

/ / /

4. Providing for such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

Dated: January 18, 2017

ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL & TRYTTEN LLP

By: /s/ Dean G. Rallis Jr.
     Dean G. Rallis Jr.

Attorneys for WELLS FARGO BANK, N.A., as successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 301 N. Lake Ave., Suite 1100, Pasadena, California 91101-4158.

On the date below, I served the within following document(s) entitled:

**WELLS FARGO'S REPLY TO DEBTOR'S OPPOSITION TO WELLS FARGO'S MOTION FOR ALLOWANCE OF POSTPETITION INTEREST, ATTORNEY'S FEES, AND COSTS**

on all interested parties in said case addressed as follows:

**Served By Means Other than Electronically Via the Court's CM/ECF System**

*Chambers Copies to Hon. Stephen L. Johnson*

Hon. Stephen L. Johnson
United States Courthouse, Room 3035
280 South First Street
San Jose, California 95113-3099
(408) 278-7515

☒ **BY OVERNIGHT MAIL SERVICE:** I am readily familiar with the firm's practice of collection and processing of correspondence by Golden State Delivery Services. Under that same practice it would be deposited on today's date in a GSO collection receptacle at Pasadena, California, for delivery within 48 hours, with instructions to bill sender on the label.

**Served Electronically Via the Court's CM/ECF System**

| *Attorneys for Debtor* | *Office of the U.S. Trustee* |
|---|---|
| Lars T. Fuller, Esq.<br>Saman Taherian, Esq.<br>THE FULLER LAW FIRM<br>60 N. Keeble Avenue<br>San Jose, CA 95126<br>Fullerlawfirmecf@aol.com | U.S. Trustee<br>Office of the U.S. Trustee / SJ<br>U.S. Federal Building<br>280 S. 1st St., Suite 268<br>San Jose, CA 95113-3004<br>USTPRegion17.SJ.ECF@usdoj.gov |

*Attorneys for the U.S. Trustee*

U.S. Office of the U.S. Trustee
1301 Clay Street
Oakland, CA 94612
(510) 637-3210
lynette.c.kelly@usdoj.gov
ustpregion17.oa.ecf@usdoj.gov

95451/000264/01641737-1

1

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on January 18, 2017.

| Marianne Mantoen | */s/ Marianne Mantoen* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP